UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

_____

|                          |   |                         |
|--------------------------|---|-------------------------|
| AIRBNB, INC.             | ) |                         |
|                          | ) |                         |
| Plaintiff,               | ) |                         |
|                          | ) |                         |
| v.                       | ) | Civil Action No._____ |
|                          | ) |                         |
| CITY OF BOSTON,          | ) |                         |
|                          | ) |                         |
| Defendant.               | ) |                         |

_____ )

## COMPLAINT OF AIRBNB, INC. FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Airbnb, Inc. ("Airbnb") brings this action to enjoin and declare unlawful the enforcement against Airbnb by the City of Boston ("Boston" or the "City") of its Ordinance Allowing Short-Term Residential Rentals in the City of Boston, Docket #0764 (the "Ordinance"), set forth in Chapter IX of the City of Boston Code. This action is brought under 42 U.S.C. § 1983, 47 U.S.C. § 230, 18 U.S.C. § 2707, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201. This action is both an as-applied and a facial challenge against the Ordinance. It is an as-applied challenge because it seeks only to prohibit the City from enforcing certain provisions of the Ordinance against Airbnb; and it is a facial challenge because certain provisions, on their face, violate the law and cannot be enforced against any hosting platform in any set of factual circumstances.

1.      This is a case about a city trying to conscript home-sharing platforms into enforcing regulations on the city's behalf, in a manner that would thwart both federal and Massachusetts law. The City of Boston has enacted an Ordinance limiting short-term residential rentals by hosts. But it goes much further than that. The Ordinance also enlists home-sharing

platforms like Airbnb into enforcing those limits under threat of draconian penalties, including $300-per-violation-per-day fines and complete banishment from doing business in Boston. Airbnb believes that home-sharing may be lawfully regulated, and it has worked with dozens of cities to develop the tools they need to do so without violating federal or state law. Boston's heavy-handed approach, however, crosses several clear legal lines and must be invalidated.

2.       The Ordinance, for example, compels Airbnb to enter into undefined so-called "agreements" with the City that will require Airbnb to take down listings posted by third-parties and prevent whatever scope of listings in whatever manner Boston dictates—or else be barred from Boston altogether. The Ordinance also forces home-sharing platforms like Airbnb to actively police third-party content on their websites by penalizing the design and operation of their platforms and restricting and imposing severe financial burdens on protected commercial speech. And it requires Airbnb to disclose to the City confidential information about its users without any legal process or precompliance review. This regime violates the Communications Decency Act (47 U.S.C. § 230), the Stored Communications Act (18 U.S.C. §§ 2701 *et seq.*), the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, and the Massachusetts Declaration of Rights.

### The City Ignored Applicable Federal Laws and the U.S. Constitution

3.       Boston's Ordinance to limit and regulate short-term rentals: (i) forces home-sharing platforms like Airbnb to sign agreements with the City requiring them to remove and bar from publication allegedly unlawful listings; (ii) compels the platforms to disclose confidential user information to the City without legal process; and (iii) imposes significant civil liability on the platforms for publishing third-party listings that advertise allegedly unlawful short-term rentals.

4.      Boston passed its Ordinance without regard to preemptive federal laws, the U.S. Constitution, and the Massachusetts Declaration of Rights.

5.      Through Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, Congress sought to protect and nurture the Internet as a forum for communication, expression, and e-commerce.  The CDA prohibits "treat[ing]" websites that host or distribute third-party content, like Airbnb, "as the publisher or speaker of any information provided by another information content provider," immunizing them from liability under any "inconsistent" state or local law.  47 U.S.C. § 230(c)(1), (e)(3).  Courts "have generally interpreted Section 230 immunity broadly, so as to effectuate Congress's 'policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages."  *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007) (quoting *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330–31 (4th Cir. 1997)).  "This preference for broad construction recognizes that websites that display third-party content may have an infinite number of users generating an enormous amount of potentially harmful content, and holding website operators liable for that content 'would have an obvious chilling effect' in light of the difficulty of screening posts for potential issues."  *Jane Doe No.1 v. Backpage.com, LLC*, 817 F.3d 12, 18–19 (1st Cir. 2016) (quoting *Zeran*, 129 F.3d at 331).  Embodied in Section 230 is "Congress's avowed desire to permit the continued development of the internet with minimal regulatory interference."  *Id.* at 19; *see Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) ("Congress wanted to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce.").

3

6.      Airbnb is a realization of Congress's goals.  It is a classic intermediary:  Airbnb operates an online platform that allows hosts and guests to find each other and arrange their own transactions for overnight accommodation.  Hosts control the relevant content of their listings and publish them; hosts and guests alone, not Airbnb, decide whether and on what terms to enter into transactions.  This brings Airbnb squarely within the protections of the CDA.

7.      The Ordinance is inconsistent with the CDA because it (i) requires Airbnb to remove (and prohibits the publication of) certain third-party rental advertisements; (ii) directly regulates the structure and operation of Airbnb's platform; and (iii) requires Airbnb to monitor, review, and verify that third-party content.  By imposing these obligations and duties on Airbnb, and costly liability for failure to comply, the Ordinance impermissibly treats Airbnb as the publisher or speaker of third-party content.  The CDA therefore preempts the Ordinance.

8.      The Ordinance apparently attempts to evade the preemptive effects of the CDA by requiring Airbnb to enter an "agreement" to undertake the offensive monitoring and removal activities.  That is not an "agreement"—it is compulsion.

9.      The Ordinance also violates the First and Fourteenth Amendments of the U.S. Constitution and Article 16 of the Massachusetts Declaration of Rights because it is an impermissible content-based regulation of speech.

10.     The Ordinance also violates the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* (the "SCA"), the Fourth Amendment, and Article 14 of the Massachusetts Declaration of Rights by requiring Airbnb to turn over personal, non-public information about its hosts.  The City cannot obtain this data without legal process and precompliance review.  In attempting to do so, the Ordinance breaches critical privacy protections.

## PARTIES

11.     Plaintiff Airbnb, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California.  It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

12.     Defendant City of Boston is an incorporated municipality located in Suffolk County, Massachusetts.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges an imminent violation of its rights under the Constitution and laws of the United States.

14.     The Court may declare the legal rights and obligations of the parties in this action under 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

15.     Venue is proper under 28 U.S.C. § 1391 because the Defendant is located and resides in this judicial district, and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

## FACTUAL ALLEGATIONS[1]

### Airbnb Is a Leading Internet Platform for Responsible Home-Sharing

16.     Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations

---

[1] These facts concern properties on the Airbnb website (www.airbnb.com) in the United States, and do not extend to Luxury Retreats (www.luxuryretreats.com), which is a subsidiary of Airbnb, Inc.

available for rental ("hosts"), can locate each other and contract directly to reserve and book travel accommodations on a short- or long-term basis.

17.     Airbnb's website, at www.airbnb.com, allows interested parties to advertise their accommodations, enables hosts and guests to locate and connect with each other, provides a platform for hosts and guests to communicate and message one another directly to determine the material terms for their bookings.  Airbnb also provides electronic storage on its platform for communications between users.  Airbnb designed its platform to allow users to book rental transactions on the same website (or app) where they view rental listings.  To do so, it provides payment processing services that permit hosts to receive payments electronically.

18.     Airbnb does not charge hosts any upfront fees when they post their listings.  Not charging hosts an upfront fee for listing their rentals removes barriers to entry and makes it more likely hosts will post their listings on Airbnb.  Instead, in consideration for use of the platform services, including its publication and booking services, Airbnb receives a service fee from both the guest and the host, which is determined as a percentage of the accommodation fee set solely by the host.  Airbnb is compensated for and able to provide its services, including its publishing, listing, and booking services, through such service fees, which help cover the costs associated with running Airbnb's website and services.

19.     Airbnb has no possessory interest in the property or accommodations that third-party hosts may list on the Internet platform.  Airbnb therefore is not a proprietor, owner, or operator of accommodations offered by hosts on the Internet platform.  As Airbnb's Terms of Service state, Airbnb "does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services."

20.     Hosts, and not Airbnb, decide whether to list their properties and with whom and when to transact, describe their rentals, set their own lengths of stay, and determine their prices. Airbnb's Terms of Service state that hosts "alone are responsible for their Listings and Host Services."  Hosts also input the minimum and/or maximum days of stay for a particular rental. Airbnb does not control the content that hosts create and is not responsible for it.

21.     As a general matter, Airbnb does not review the hundreds of thousands of third-party listings before the listings appear on Airbnb's marketplace.  Rather, the process for listing properties is automated, and once the host provides listing information, the listing appears on the Airbnb marketplace almost immediately.

## Airbnb Is Committed to Responsible Home-Sharing

22.     Hosts who post listings on Airbnb are often everyday people using the powerful tools afforded by the Internet to engage in home-sharing to supplement their incomes.  At present, there are approximately 6,300 listings for rentals in Boston on Airbnb's marketplace. An average Boston host earns $8,600 per year from hosting on Airbnb, and many hosts say that the extra income earned from hosting has allowed them to stay in their homes.

23.     As part of the Airbnb Community Compact, the company is committed to helping promote responsible home-sharing to make cities stronger.  Airbnb has routinely cooperated with cities to increase host compliance with municipal laws, including through host-outreach efforts and by providing online tools for improved tax collection.  Airbnb has worked with other cities to develop regulations that do not run afoul of Section 230 or the Constitution.

24.     Airbnb also advises its hosts and guests to be aware of and comply with local laws in listing and renting units listed on Airbnb.  The Airbnb Terms of Service state that "Hosts alone are responsible for identifying, understanding, and complying with all laws, rules and

7

regulations that apply to their Listings and Host Services." Airbnb also maintains a "Responsible Hosting" section on the Airbnb website. Airbnb provides a variety of general information for hosts about laws and regulations they should follow, including safety guidelines and property regulations.

25.      Airbnb has a specific page on its "Responsible Hosting" website for Boston that provides information about Boston's laws and regulations. The page notes that the "City of Boston requires that individuals or organizations doing business in the City of Boston apply for and obtain a business certificate every four (4) years from the Office of the City Clerk." It also points potential hosts to the Boston Zoning Code "to determine whether your listing might implicate any zoning definitions." And it links to information about the Inspectional Services Department's requirement that a property be registered if it is to be occupied without the owner of the property present." Finally, the page refers potential hosts to the City's Licensing Board rules and Room Occupancy Tax Guide so they can ascertain whether additional regulations apply to their residences.

### Airbnb Protects Private Information

26.      Airbnb is one of a number of competitors that offer platforms for potential hosts to list properties for rent. As a competitor in this marketplace, Airbnb considers that its confidential business information is extremely important for Airbnb's ability to maintain its business success, and therefore takes various measures to guard its business information from unwanted disclosure.

27.      Airbnb also takes various steps to protect the privacy of its hosts and guests. For example, although both hosts and guests complete profiles to participate on the site, personal information, including contact details and even last names, is not revealed until a booking has

been completed. These measures provide both security and privacy for hosts and guests, and indicate the importance of privacy to the users of the Airbnb platform. This, in turn, encourages hosts and guests to have confidence in Airbnb's platform, which is crucial for Airbnb's business success.

**Boston's Regulations Conscript Platforms into Impermissible Compelled Enforcement**

28.     On June 13, 2018, the City enacted Docket #0764, *an Ordinance Allowing Short-Term Residential Rentals in the City of Boston*. The City Council reported that the Ordinance would "provide a framework to allow and regulate short-term rentals in the City through a registration process under the jurisdiction of the City's Inspectional Services Department ('ISD')." Boston City Council, Committee on Government Operations, Report of Committee Chair (June 13, 2018). The stated purpose of the Ordinance "is to provide a process through which certain dwelling units may be registered with the City of Boston for use as short-term rental units under the stipulations laid out within the Ordinance." Ordinance § 9-14.1.

29.     In general, the Ordinance restricts which types of residential units in the City may be offered as "Short-Term Rentals." *Id.* § 9-14.3, 9-14.4AA-B. A "Short-Term Rental" is defined as "[t]he use of a Residential Unit for residential occupancy by a person or persons for a period of fewer than twenty-eight consecutive calendar days for a fee." *Id.* 9-14.2.

30.     The Ordinance makes only some units eligible as Short-Term Rentals ("Eligible Residential Units"): (i) "Limited Share" units, which are part of an Operator's primary residence and are offered for rental while the Operator is present; (ii) "Home Share" units, which are part of an Operator's primary residence (but apparently can be offered whether or not the Operator is present); and (iii) "Owner-Adjacent" units, which are units in two- or three-family buildings where the Operator lives in one unit but rents out another unit. *Id.* § 9-14.2.

9

31.     The Ordinance makes other types of units ineligible as Short-Term Rentals ("Ineligible Residential Units"), including units that are (i) income-restricted or below market rate, (ii) not allowed to be leased or subleased based on state or federal law, (iii) deemed "Problem Properties" by the Mayor's office, or (iv) found to have violated municipal regulations more than three times in a six-month period.  Ordinance § 9-14-4A.  The City will maintain an "Ineligible Units List" that catalogs all "Residential Units deemed ineligible for use as Short-Term Rental Units subject to the provisions of Section 9-14.4A." *Id.* § 9-14.2.

32.     The Ordinance sets forth certain residential units not subject to the Ordinance. *Id.* § 9-14.4B.

33.     The Ordinance also creates a Short-Term Rental Registry, a database ISD maintains in conjunction with the City of Boston Department of Innovation and Technology ("DoIT"), "that includes information on Operators who are permitted to offer their Residential Units as Short-Term Rentals." *Id.* § 9-14.2.

34.     The Ordinance imposes requirements on "Operators" of Short-Term Rentals, defined as "[a] natural person who is the owner of the Residential Unit that he or she seeks to offer as a Short-Term Rental." *Id.*  Operators must, among other things, register their Short-Term Rentals and include the registration number on any listing or advertisement for the unit, *id.* §§ 9-14.2, 9-14.5(j)(i); comply with all applicable federal, state, and local laws and codes, *id.* § 9-14.5(h); and maintain written records demonstration compliance with the Ordinance, *id.* § 9-14.5(i).  The Ordinance thus creates classes of Short-Term Rentals that are either "Eligible Residential Units" or "Ineligible Residential Units."

35.     The Ordinance also significantly alters the duties of online home-sharing platforms.  It does so by imposing several requirements on "Booking Agents," which the

Ordinance defines as, "[a]ny person or entity that facilitates reservations or collects payment for a Short-Term Rental on behalf of or for an Operator." *Id.*

36.     First, the Ordinance requires Booking Agents to aid the City's enforcement efforts by screening advertisements:   "The Commissioner *shall* enter into agreements with Booking Agents for assistance in enforcing the provisions of this section, including but not limited to an agreement whereby the Booking Agent agrees to remove a listing from its platform for exceeding the maximum number of days a Residential Unit may be offered as a Short-Term Rental, whereby the Booking Agent agrees to remove a listing from its platform that is deemed ineligible for use as a Short-Term Rental under the provisions of this Ordinance, and whereby the Booking Agent agrees to prohibit a host from listing any listing without a valid registration number from the City." *Id.* § 9-14.10.b (emphasis added).

37.     Second, the Ordinance prohibits Airbnb and similar online platforms from providing reservation or payment services for a fee for third-party rental listings that advertise properties that are ineligible for short-term rental.   Specifically, it provides that no Booking Agent may "accept[] a fee for booking a unit as a Short-Term Rental, where such unit is not an eligible Residential Unit." *Id.* § 9-14.9.a.

38.     Third, the Ordinance requires home-sharing platforms like Airbnb to disclose to the City their business records and confidential information about their clients.  Booking Agents must "provide the City, on a monthly basis, an electronic report, in a format determined by the City . . . of the listings maintained, authorized, facilitated or advertised by the Booking Agent within the City of Boston for the applicable reporting period." *Id.* § 9-14.11.  The report must include "a breakdown of where the listings are located, whether the listing is for a room or a whole unit, and shall include the number of nights each unit was reported as occupied during the

11

applicable reporting period." *Id.* This forced data disclosure is a tool for the City to impose penalties.

39. The Ordinance imposes significant penalties for non-compliance. To begin, the Ordinance gives the City carte blanche to issue violation notices and fines for *any* violation of *any* provision of the regulations, providing that "[a]ny person who fails to comply with any notice of violation or other order issued pursuant to this section by the Commissioner or a designee for a violation of any provision of this section shall be fined one hundred dollars ($100) per violation per day. Each day's failure to comply with a notice of violation or any other order shall constitute a separate violation." *Id.* § 9-14.9.c.

40. The provisions specifically regulating Booking Agents impose additional penalties:

a. As to the Ordinance's requirement that home-sharing platforms like Airbnb police the content of third-party listings, the Ordinance provides: "Any Booking Agent that fails to enter into such agreements to actively prevent, remove or de-list any ineligible listings shall be prohibited from conducting business in the City." *Id.* § 9-14.10.b.

b. As to its ban on Airbnb and like platforms' ability to provide their services for a fee, the Ordinance provides: "Any person who offers a unit as a Short-Term Rental, or any Booking Agent who accepts a fee for booking a unit as a Short-Term Rental, where such unit is not an eligible Residential Unit, shall be fined three hundred dollars ($300) per violation per day. Each day's failure to comply with a notice of violation or any other order shall constitute a separate violation." *Id.* § 9-14.9.

12

c.     As to the Ordinance's requirement that Airbnb disclose confidential business records and third-party information, the Ordinance makes violations punishable under the City's general power to enforce, and assess fines for violations of, municipal laws.  The Ordinance states: "The provisions of this section may be enforced in accordance with the noncriminal disposition process of M.G.L. c. 40, s. 21D and, if applicable, by seeking to restrain a violation by injunction.  The provisions of this section may also be enforced according to M.G.L. Chapter 40U as accepted by the City of Boston, also known as the 'Green Ticket' law." *Id.* 9-14.10.a.

**Compliance with the Ordinance Would Impose Substantial Burdens on
Airbnb and Harm the Public**

41.     Airbnb's platform allows a rental transaction to be completed on the same website once the host and guest agree to it.  But the Ordinance's provisions regulating Booking Agents would require Airbnb to fundamentally change the operation and design of its website, monitor every listing prior to allowing a booking transaction, and remove or reject certain third-party advertisements prior to publication.  These requirements would force fundamental modifications to Airbnb's intermediary service, introduce delays in the booking process, erode customer goodwill, and require Airbnb to expend significant financial and technical resources.

42.     First, the requirement that Airbnb enter into agreements with the City to remove (or prohibit prior to publication) postings for units that are not in compliance with the Ordinance's requirements for Short-Term Rentals or that are Ineligible Residential Units would force Airbnb to continually monitor, and withdraw from publication, third-party advertisements.

43.     Specifically, to comply just with the agreements enumerated in Section 9-14.10.b, Airbnb would have to verify whether each listing exceeds the maximum number of booking days

permitted for a Short-Term Rental under the Ordinance, whether it is "ineligible for use as a Short-Term Rental" under the Ordinance, and whether it lists a *valid* registration number. Ordinance § 9-14.10.b.  Airbnb could not comply with this provision simply by looking at a third-party listing.  Rather, Airbnb would have to review each listing to, at the very least, (1) compare the number of days the listing advertises to the number of days permitted under the Ordinance; (2) ascertain whether the unit falls into one of the four categories that are "not eligible to be offered as Short-Term Rentals," including units that are below market rate or income-restricted, units that are subject to any other law that prohibits their leasing, units that are designated as "Problem Properties" by the Mayor, and units that have been subject to 3 or more findings of violations of the Ordinance within a 6-month period, *id.* § 9-14.4A; (3) if the advertisement contains a registration number, compare that number to the Short-Term Registry to ensure that it is valid, *id.* § 9-14.5(j)(i); and (4) if the advertisement does not contain a registration number, compare the information in the listing to the information in the Short-Term Registry to determine whether the unit is validly registered, § 9-14.2.

44.    These onerous review requirements cannot be completed with an automated click of a button.  Indeed, much of the information Airbnb would require to comply, such as whether a property has been designated a "Problem Property" by the Mayor, would not even be readily available to Airbnb, and certainly would not be included in the listing itself.

45.    The burden to Airbnb of reviewing third-party content to prohibit and remove postings would not be measured solely by the static number of listings at a single point in time, but would be an ongoing and expanding burden.  There are at present approximately 6,300 Airbnb listings in Boston.  In the normal course of business, hosts can add new listings, change the status of listings, and deactivate listings every day.  Airbnb then, too, would have to monitor

14

for every change constantly. The Ordinance's express content-removal requirement thus would cause a significant disruption to Airbnb's operations and impose substantial personnel and other costs on Airbnb (particularly because other cities have attempted to enact, and may continue to attempt, similar regulatory requirements). It also would injure the significant business goodwill that Airbnb has generated from the hosts and guests who have come to rely on its platform.

46.     Airbnb also does not know what additional agreements it will be forced to enter with the City. By using the phrase "including but not limited to," the Ordinance suggests that the City could require Airbnb to enter all manner of agreements. Because this requirement is backed by a steep penalty—a complete ban on doing business in Boston for failure to enter such an agreement—the City has vast discretion to impose as-yet undefined agreements on Airbnb.

47.     Second, the ban on Airbnb's accepting a fee for a rental booking that does not comply with the Ordinance would require Airbnb fundamentally to change the operation and design of its platform. Airbnb provides booking, calendaring, and payment processing services in connection with advertisements on its website. Airbnb's key innovative design feature is that it enables booking transactions between hosts and guests on the same website—with one click. Airbnb provided a technological step forward from a "'bulletin board' service, or an online site 'on which Internet subscribers post comments and respond to comments posted by others.'" *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1104 (C.D. Cal. 2017) (quoting *Kimzey v. Yelp! Inc.*, 836 F.3d at 1263, 1266 (9th Cir. 2016)). The Ordinance's ban on accepting fees for certain transactions based on their content would force Airbnb to eliminate this key design feature. Common sense explains why: Airbnb could not risk allowing an automatic booking before reviewing the content of the listing to ensure that it complies with the Ordinance. Accordingly, Airbnb would have to undertake a fundamental redesign of its platform.

48.     Such a change would harm users.  Hosts and guests greatly value using Airbnb's services to facilitate payment and calendaring of rentals for listings published on Airbnb's site. In the modern world of e-commerce, users expect to immediately enter into transactions online for goods and services advertised on home-sharing platforms like Airbnb.  They do not expect to view listings they cannot book.  Were Airbnb no longer able to offer its booking services, many hosts and guests likely would be confused and angered by the change (of not being able to book a listing on the site) and may stop using Airbnb's platform altogether.

49.     The ban on taking fees for certain third-party listings also would necessarily require Airbnb to monitor and remove such listings.  Specifically, Section 9-14.9.a penalizes Airbnb for accepting a fee for the booking of a unit that "is not an eligible Residential Unit."  *Id.* § 9-14.9.a.  This provision does not define what "not eligible" means.  At the very least, as with Section 9-14.10.b, Airbnb would have to review each listing to determine whether the unit it advertised fell into one of the four categories deemed "not eligible" under the Ordinance.  Again, this would require detailed information that the advertising third-party would not include in the listing.  And if "not eligible" in this provision is defined more broadly to mean unlawful under the Ordinance, then Airbnb would have to review each listing to determine whether it is *in any way in violation* of the Ordinance.  For the same reasons described above, therefore, Airbnb could not achieve compliance with simple automation. Instead, it will have to monitor and review third-party content before the final stage of the booking process occurs to ensure that the fee it accepts is not connected to an ineligible listing and remove third-party content from its website so that its platform is not cluttered with listings that are unbookable or that create a substantial risk of liability if booked.

50. The third-party advertisements for properties on Airbnb's website are not unlawful on their face because they do not indicate whether a property complies with the Ordinance. An advertisement's inclusion of a registration number would not rectify this problem. *See* Ordinance § 9-14.5(j)(i) (requiring Operators to include a registration number in a listing). If the listing did not include a registration number, the underlying rental may still be lawful, as the property may be registered during booking even if it was not at the time of publication. And if the listing did include a registration number, Airbnb still would have to verify the registration number is valid by comparing the information in the advertisement with the information in the Short-Term Rental Registry in order to minimize the risk of liability. As a result, Airbnb cannot know merely by looking at listings whether they propose illegal transactions. Given the prospect of significant penalties, if Airbnb has any doubt about the lawfulness of a particular listing, it will likely have to remove the listing, even if the Operator has complied with the Ordinance.

51. Enforcement of the Ordinance will cause Airbnb harm because Airbnb faces the threat of substantial penalties under a preempted law that violates its constitutional rights and will substantially disrupt its business and erode customer goodwill.

## CLAIMS FOR RELIEF

### CLAIM 1: VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

52. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

53. Airbnb is a provider of an interactive computer service within the meaning of the Communications Decency Act, 47 U.S.C. § 230, because it operates the interactive online

platform Airbnb.com. Airbnb provides information to multiple users by giving them computer access to a computer server within the meaning of 47 U.S.C. § 230(f)(2).

54.     The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3).

55.     The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that treat Airbnb as the publisher or speaker of information provided by another information content provider and derive from Airbnb's status as a publisher or speaker of third-party content, all in a manner prohibited by Section 230.

56.     First, Section 9-14.10 requires Airbnb to enter into agreements with the City "including but not limited to an agreement whereby the Booking Agent agrees to remove a listing from its platform for exceeding the maximum number of days a Residential Unit may be offered as a Short-Term Rental, whereby the Booking Agent agrees to remove a listing from its platform that is deemed ineligible for use as a Short-Term Rental under the provisions of this Ordinance, and whereby the Booking Agent agrees to prohibit a host from listing any listing without a valid registration number from the City." Code of Boston, Ch. IX, Sec. 1, § 9-14.10.b.

57.     Section 230 of the CDA unambiguously bars efforts "to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Jane Doe*, 817 F.3d at 18 (internal quotation marks omitted). An agreement with the City compelled under Section 9-14.10.b would require Airbnb to make decisions to remove content and to decline to publish content. This provision

18

treats Airbnb as a publisher of third-party rental listings on its website and therefore violates and conflicts with the CDA.

58. Second, Section 9-14.9.a imposes significant penalties on Airbnb if it accepts fees for booking transactions associated with listings that do not comply with the Ordinance. Facilitating these transactions between hosts and guests automatically and immediately is a key design feature of Airbnb's platform.

59. Section 230 of the CDA protects an online service provider's "decisions regarding the 'construct and operation' of its websites." *Lycos*, 478 F.3d at 422. By requiring that Airbnb verify that a listing complies with the Ordinance before completing a booking transaction, the ban on fees compels Airbnb to review listings prior to processing booking transactions or to cease processing booking transactions altogether. This direct regulation of the design and operation of Airbnb's website violates and conflicts with the CDA.

60. Section 9-14.9.a also effectively requires Airbnb to monitor and remove content associated with third-party rental advertisements. Specifically, Airbnb must verify whether the content of a listing complies with the Ordinance at or prior to the time it receives a fee for completing a booking transaction. Monitoring and removing content associated with third-party listings are protected editorial acts, and treating Airbnb as a publisher or speaker of third-party content violates and conflicts with the CDA.

61. The Ordinance is also preempted because it would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Franklin California Tax-Free Trust v. Puerto Rico*, 805 F.3d 322, 343 (1st Cir. 2015) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983)). The Ordinance stands as an obstacle to the CDA's core goals of protecting innovative online

platforms like Airbnb from liability based on the illegal activities of third parties, promoting the development of e-commerce, and preserving the vibrant free market for the Internet with minimal government regulation.

62.     The Ordinance is a "State or local law that is inconsistent with" Section 230, in violation of 47 U.S.C. § 230(e)(3).

63.     The enforcement of the Ordinance against Airbnb violates and is preempted by 47 U.S.C. § 230.

64.     The Ordinance interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

65.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

**CLAIM 2:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND ARTICLE 16 OF THE MASACHUSSETTS DECLARATION OF RIGHTS AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

**(Content-Based Restrictions on Speech)**

66.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

67.     The Ordinance violates the First Amendment and Article 16 of the Massachusetts Declaration of Rights because it imposes content-based restrictions on commercial speech by requiring online platforms like Airbnb to monitor, remove, and prohibit the publication of advertisements that are not illegal on their face to avoid severe penalties.

68.     The Ordinance requires Airbnb to agree to remove or prohibit the publication of third-party content on its website; if it does not so agree, the City may prohibit Airbnb from

operating in Boston.  Ordinance § 9-14.10.b.  The Ordinance also imposes significant monetary penalties on Airbnb if it "accept[s] a fee for booking a unit as a Short-Term Rental, where such unit is not an eligible Residential Unit."  *Id.* § 9-14.9.a.

69.     A law is "presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech."  *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*, 502 U.S. 105, 115 (1991).  Whether that financial burden taxes speech itself or speech-derived income, "[b]oth forms of financial burden operate as disincentives to speak."  *Id.* at 117.  For that reason, "[l]awmakers may no more silence unwanted speech by burdening its utterance than by censoring its content."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011).  Article 16 provides the same protections for speech as the First Amendment to the federal Constitution.  *See, e.g.*, *Bulldog Investors General Partnership v. Commonwealth*, 953 N.E.2d 691, 703 (Mass. 2011).  Because the Ordinance both compels Airbnb to agree to remove and prohibit the publication of third-party listings based on their content, and places a financial burden on speech-derived income by requiring Airbnb to police speech on its platform before accepting fees for booking transactions, it targets protected commercial speech and disproportionately burdens online home-sharing platforms like Airbnb.

70.     The Ordinance constitutes a content-based restriction on speech because it applies solely based on the content of published rental listings on Airbnb's platform.

71.     The Ordinance's burden on speech is not narrowly or appropriately tailored to promote a compelling or substantial interest by the City, and is not likely to achieve any such interest in a direct and material way.  For example, the City can directly enforce its short-term rental ban on hosts.  The City has not shown, and cannot show, that less-speech-restrictive alternatives would not be an adequate means of achieving the City's policy goals.

72.     The enforcement of the Ordinance against Airbnb therefore violates the First Amendment of the United States Constitution, as applied to the City by the Fourteenth Amendment, and Article 16 of the Massachusetts Declaration of Rights.

73.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance would conflict with and violate the First Amendment and Article 16 of the Massachusetts Declaration of Rights.

### CLAIM 3:  VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 12 OF THE MASSACHUSETTS DECLARATION OF RIGHTS, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 18 U.S.C. § 2707, 42 U.S.C. § 1983, AND THE COURT'S EQUITABLE POWERS

74.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

75.     The Ordinance violates the due process guarantees of the Fourteenth Amendment and Article 12 of the Massachusetts Declaration of Rights because it is unconstitutionally vague.

76.     The Ordinance confers standardless discretion on the City to force Airbnb to enter into an "agreement" with the City to enforce the Ordinance, through whatever means the City demands, under threat of being banned from conducting business in the City of Boston if Airbnb refuses to comply.  Ordinance § 9-14.10.b.

77.     "Vague laws that do not limit the exercise of discretion by officials engender the possibility of arbitrary and discriminatory enforcement," thereby violating due process.  *Caswell v. Licensing Comm'n for Brockton*, 444 N.E.2d 922, 928 (Mass. 1983) (citing *Grayned v. Rockford*, 408 U.S. 104, 108-09 & n.4 (1972)).   A policy that confers "unlimited and standardless discretion" to the enforcing authority denies regulated parties "fair and even-handed review . . . by the [enforcing authority] and a framework for judicial review of whether a particular decision is arbitrary and capricious or based upon error of law." *Grenier v. Board of Selectmen of Shrewsbury*, 954 N.E.2d 44, 48 (Mass. 2011).  Where a regulation concerns speech,

the need for "narrow, objective and definite standards" is particularly acute.  *Fitchburg v. 707 Main Corp.*, 343 N.E.2d 149, 152–53 (Mass. 1976); *see Reno v. American Civil Liberties Union*, 521 U.S. 844, 871–72 (1997).

78.     The Ordinance gives the City unlimited authority to require Airbnb to sign agreements "including, but not limited to" the three agreements enumerated in the provision requiring Airbnb to remove and prohibit publication of content.  Ordinance § 9-14.10.b.  The Ordinance provides no standards or limits on what the City can require, and there is nothing in the text of the Ordinance to constrain Boston's discretion.  *Id.*

79.     The enforcement of the Ordinance against Airbnb therefore violates the Fourteenth Amendment and Article 12 of the Massachusetts Declaration of Rights.

80.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance would conflict with and violate the Fourteenth Amendment and Article 12 of the Massachusetts Declaration of Rights.

### CLAIM 4:  VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701 *ET SEQ.*, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 18 U.S.C. § 2707, 42 U.S.C. § 1983, AND THE COURT'S EQUITABLE POWERS

81.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

82.     Under the SCA, "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," without a subpoena or other legal process, absent an applicable exception, none of which apply here.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

83.     Airbnb is a provider of an "electronic communication service" within the meaning of the SCA, as it provides to its users "the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  Airbnb also is a provider of a remote computing

service within the meaning of the SCA, as it provides to users "computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

84.     The City is a "governmental entity" under the SCA.  *See* 18 U.S.C. § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof").

85.     The Ordinance requires a Booking Agent to "provide to the City, on a monthly basis, an electronic report, in a format determined by the City . . . of the listings maintained, authorized, facilitated or advertised by the Booking Agent within the City of Boston for the applicable reporting period.  The report shall include a breakdown of where the listings are located, whether the listing is for a room or a whole unit, and shall include the number of nights each unit was reported as occupied during the applicable reporting period."  Ordinance § 9-14.11.

86.     The enforcement of this provision violates and conflicts with the SCA, and Airbnb's rights thereunder, because it requires Airbnb to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity," without a subpoena or other form of legal process.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

87.     This provision also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

88.     Pursuant to 18 U.S.C. § 2707(a)-(b), 42 U.S.C. § 1983, and this Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the SCA.

## CLAIM 5:  VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 14 OF THE MASSACHUSETTS DECLARATION OF RIGHTS AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

89.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

90.     The Ordinance requires a Booking Agent to "provide to the City, on a monthly basis, an electronic report, in a format determined by the City . . . of the listings maintained, authorized, facilitated or advertised by the Booking Agent within the City of Boston for the applicable reporting period.  The report shall include a breakdown of where the listings are located, whether the listing is for a room or a whole unit, and shall include the number of nights each unit was reported as occupied during the applicable reporting period."  Ordinance § 9-14.11.

91.     The enforcement of this provision against Airbnb violates the Fourth Amendment of the Constitution, as applied to the City by the Fourteenth Amendment, and Article 14 of the Massachusetts Declaration of Rights, because it constitutes an unreasonable search and/or seizure by compelling Airbnb to disclose to the City sensitive, private business records and/or other information in which Airbnb has a reasonable expectation of privacy, without prior judicial authorization or precompliance review.

92.     Pursuant to 42 U.S.C. § 1983 and this Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent enforcement of the Ordinance, which would violate the Fourth Amendment and Article 14 of the Massachusetts Declaration of Rights.

### CLAIM 6:  DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

93.     Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

25

94.     This action presents an actual controversy between Airbnb and the City concerning the validity of the Ordinance and its enforceability against Airbnb and other online Booking Agents.

95.     Based on the foregoing allegations, Airbnb is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such enforcement would violate the CDA, 47 U.S.C. § 230; the Supremacy Clause, U.S. Const. art. VI, cl. 2; the SCA, 18 U.S.C. §§ 2701 *et seq.*; the First, Fourth, and Fourteenth Amendments of the United States Constitution, and Articles 12, 14 and 16 of the Massachusetts Declaration of Rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

96.     Declare that, as applied to Airbnb, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause because it would permit the imposition of civil penalties on Airbnb for its publication-related activities and impose duties on Airbnb regarding its protected editorial acts concerning third-party rental listings and its protected editorial decisions regarding the structure and organization of its website.

97.     Declare that, as applied to Airbnb, the Ordinance violates the First and Fourteenth Amendments of the U.S. Constitution and Article 16 of the Massachusetts Declaration of Rights because it would place content-based restrictions on protected commercial speech by imposing severe penalties on Airbnb, and the restrictions the Ordinance would impose are not sufficiently tailored to promote a compelling or substantial interest by the City.

98.     Declare that, as applied to Airbnb, the Ordinance violates the Fourteenth Amendment of the U.S. Constitution and Article 12 of the Massachusetts Declaration of Rights because it is unconstitutionally vague and therefore violates due process.

99.     Declare that, as applied to Airbnb, the Ordinance violates 18 U.S.C. §§ 2701 *et seq.* and the Supremacy Clause because it would compel Airbnb, an electronic communication service provider and remote computing service provider, to divulge information pertaining to a subscriber or to a customer of such service to the City, a governmental entity, without a subpoena or any other form of legal process.

100.     Declare that, as applied to Airbnb, the Ordinance violates the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights because the Ordinance compels Airbnb to disclose to the City sensitive, private business records in which Airbnb has a reasonable expectation of privacy, without prior judicial authorization or precompliance review.

101.     Preliminarily and permanently enjoin the City; its officers, agents, servants, employees, and attorneys; and those persons in concert or participation with them from taking any actions to enforce Sections 9-14.9.a., 9-14.10.b., and 9-14.11 of the City of Boston Code, and the other portions of the Code providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) the completion of booking transactions for rental advertisements published by third party hosts or the publication of other information provided by third-party hosts on Airbnb's platform; (b) failing to remove or prohibit from publication any short-term rental listing that does not comply with the Ordinance; (c) failing to disclose to the City each listing in the City and the names of the persons responsible for the listings, the addresses of the listings, the content of the listing—including whether the

listing is for a room or a whole unit, and the number of nights each listing was reported as

occupied—and length of stay and price information associated with the listings; or (d) failing to

monitor and/or verify whether any short-term rental listing complies with the Ordinance.

102. Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. §

1988; and

103. Award Airbnb such other and further relief as the Court deems just and proper.

Respectfully submitted,

AIRBNB, INC.,

By its attorneys,

/s/ Howard M. Cooper
HOWARD M. COOPER (BBO #543842)
hcooper@toddweld.com
CHRISTIAN G. KIELY (BBO #684308)
ckiely@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777

CHAD GOLDER (*Pro hac vice* pending)
chad.golder@mto.com
ADELE M. EL-KHOURI (*Pro hac vice* pending)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, 7th Floor
Washington, DC 20004-1361
Tel: (202) 220-1100
Fax: (202) 220-2300

JONATHAN H. BLAVIN (*Pro hac vice* pending)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-4000
Tel: (415) 512-4000
Fax: (415) 512-4077

Dated: November 13, 2018