UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AIRBNB, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 18-12358-LTS |
| CITY OF BOSTON, | ) ) ) | |
| Defendant. | ) ) ) | |

ORDER ON MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 3)

May 3, 2019

SOROKIN, J.

Airbnb, Inc. seeks a preliminary injunction barring the enforcement of certain provisions in a City of Boston ordinance aimed at regulating short-term residential rentals in Boston. In particular, Airbnb claims three sections of the ordinance are preempted by or violate the Communications Decency Act, the Stored Communications Act, and/or the First, Fourth, and Fourteenth Amendments to the United States Constitution. After careful consideration, Airbnb's motion is ALLOWED in part and DENIED in part.

I.   BACKGROUND

Based in San Francisco, Airbnb is a company that operates an "online marketplace for people to list, explore, and book both short-term and long-term housing accommodations." Doc. No. 1 at 5.[1] Its platform connects "hosts" and "guests," facilitates their communication with one another to reserve and book short- or long-term rental accommodations, and "provides payment

---

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers appearing in the ECF header.

processing services" at the time of booking.  Id. at 5-6.  Airbnb charges no fees when a host lists a property on the platform, nor does it own or operate any of the properties.  Id. at 6.  Rather, it makes money by collecting "a service fee from both the guest and the host," "determined as a percentage of the accommodation fee set solely by the host," which compensates Airbnb for "its publishing, listing, and booking services."  Id.  The fee is collected "instantaneously" at the time of booking.  Doc. No. 5 at 2.  Airbnb has a subsidiary that exists "solely" to provide payment processing services for transactions occurring on its platform.  Doc. No. 34 at 1.

The bulk of the content in Airbnb listings is provided by the hosts.  In particular, hosts provide unit locations and descriptions, set limits on lengths of stay, determine their own prices, and choose whether and how to disclose compliance with applicable state and local registration requirements or other similar regulations.  Id. at 2-3; Doc. No. 5 at 4.  "As a general matter, Airbnb does not review" a listing before it is published on the platform, nor does it edit the content of listings.  Doc. No. 5 at 4-5.  It does, however, provide "certain ancillary features" that can generate automated notifications in connection with listings.  Doc. No. 34 at 2-3.

Airbnb's Terms of Service, which all users must accept before posting listings or booking reservations, require users of the platform to identify and comply with applicable "laws, rules and regulations," including local registration or licensing requirements.  Doc. No. 5 at 3, 5; Doc. No. 5-1 at 3-4.  The Terms of Service also require users to indemnify Airbnb and its subsidiaries for any liability arising from a user's breach of the Terms of Service or "any laws [or] regulations."  Doc. No. 5-1 at 28.  When signing up for Airbnb, users also must accept a Privacy Policy, Doc. No. 5 at 5, which provides:

> Airbnb . . . may disclose your information, including personal information, to . . . governmental authorities . . . if and to the extent we are required or permitted to do so by law or if such disclosure is reasonably necessary . . . to comply with our legal

>obligations . . . .   These disclosures may be necessary to comply with our legal
>obligations . . . .

Doc. No. 5-1 at 11-12.  The Policy further states that Airbnb "may" notify users of requests for such disclosures, but it neither requires nor guarantees such notice.  Id. at 12.

In June 2018, the City enacted "Docket #0764, an Ordinance Allowing Short-Term Residential Rentals in the City of Boston," to "provide a framework to allow and regulate short-term rentals in the City through a registration process."  Doc. No. 21-1 at 2.  The Ordinance limits the types of properties eligible for use as short-term rentals, restricts how many days per year a property may be used in that manner, requires registration of units that are to be used for that purpose, and specifies penalties for individuals operating short-term rentals in violation of the Ordinance.  Id. at 7-16.  Besides regulating operators of short-term rental units, the Ordinance also contains provisions applicable to a "Booking Agent," which the Ordinance defines as "[a]ny person or entity that facilitates reservations or collects payments for a Short-Term Rental on behalf of or for an Operator."  Id. at 7.  The parties agree that Airbnb is a "Booking Agent" within the meaning of the Ordinance.

This action focuses on three sections of the Ordinance pertaining to Booking Agents.  The first is subsection 9-14.9(a), which specifies "Penalties" for "Offering an Ineligible Unit as a Short-Term Rental" ("the Penalties provision"): "[A]ny Booking Agent who accepts a fee for booking a unit as a Short-Term Rental, where such unit is not an eligible Residential Unit, shall be fined three hundred dollars ($300) per violation per day."[2]  Id. at 14.  The second is

---

[2] This provision goes on to allow for compounding the fine, treating "[e]ach day's failure to comply with a notice of violation" as "a separate violation."  Doc. No. 21-1 at 14.  As the City construes this provision, and as this Court reads its plain language, the possibility of compounding fines arises only for Operators (who also violate the same subsection by offering an ineligible unit for short-term rental), and not for Booking Agents (whose violation of this provision occurs only once per booking, at the moment they accept a fee).  Doc. No. 31 at 6; Doc. No. 31-4 at 13

subsection 9-14.10(b), which provides for "Enforcement [of the Ordinance] by [a] Booking Agent" ("the Enforcement provision"):

> The Commissioner shall enter into agreements with Booking Agents for assistance in enforcing the provisions of this section, including but not limited to an agreement whereby the Booking Agent agrees to remove a listing from its platform for exceeding the maximum number of days a Residential Unit may be offered as a Short-Term Rental, whereby the Booking Agent agrees to remove a listing from its platform that is deemed ineligible for use as a Short-Term Rental under the provisions of this Ordinance, and whereby the Booking Agent agrees to prohibit a host from listing any listing without a valid registration number from the City.
>
> Any Booking Agent that fails to enter into such agreements to actively prevent, remove or de-list any ineligible listings shall be prohibited from conducting business in the City.

Id. at 15. The final challenged provision is section 9-14.11, which relates to "Data Sharing" ("the Data provision"):

> A Booking Agent shall provide to the City, on a monthly basis, an electronic report, in a format determined by the City, . . . of the listings maintained, authorized, facilitated or advertised by the Booking Agent within the City of Boston for the applicable reporting period. The report shall include a breakdown of where the listings are located, whether the listing is for a room or a whole unit, and shall include the number of nights each unit was reported as occupied during the applicable reporting period.

Id. at 15-16. The Ordinance took effect on January 1, 2019.

Airbnb sued the City on November 13, 2018, seeking declarations that the challenged provisions of the Ordinance violate section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq.; and the Supremacy Clause and the First, Fourth, and Fourteenth Amendments to the United States Constitution (along with parallel provisions in the Massachusetts Declaration of Rights). Doc. No. 1. Airbnb also sought to preliminarily, then permanently, enjoin enforcement of the Ordinance against Booking Agents like itself. Doc. Nos. 1, 3.

The City agreed not to enforce the Ordinance against Booking Agents pending resolution of this lawsuit.  Doc. No. 31-4 at 3.  Thereafter, it answered the complaint and opposed the motion for a preliminary injunction.  Doc. No. 31.  Airbnb replied, Doc. No. 32,[3] and both parties notified the Court of supplemental authorities they deemed relevant, Doc. Nos. 22, 36, 37.  The Court heard argument on the motion on April 8, 2019 and took the matter under advisement.

II.     LEGAL STANDARDS

The familiar standard governs Airbnb's motion for a preliminary injunction.  A court assessing such a request "must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest."  Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013).  Airbnb "bears the burden of establishing that these four factors weigh in its favor."  Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).  A "preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

Resolution of the most seriously contested portion of the pending motion turns on whether Airbnb is likely to succeed in its challenge to the Penalties provision under the CDA.  Section 230 of the CDA is titled "Protection for private blocking and screening of offensive material."  The statute itself identifies five policies underlying it, including preserving a "vibrant

---

[3] The Local Rules require double spacing of all memoranda, L.R. 5.1(a)(2), and reply briefs ordinarily are limited to five pages absent leave of court, see Standing Order re: Briefing of Summary Judgment Motions for Judge Leo T. Sorokin's Session, available at http://www.mad.uscourts.gov/boston/pdf/sorokin/LTS_SO_SumJgmt.pdf.  Airbnb's reply is more than twenty pages long, with text that is discernibly condensed to something less than double spacing.  Airbnb shall conform all future submissions to the Local Rules and to this Session's practices.  Failure to do so may lead to the striking of offending submissions.

and competitive free market" online "unfettered by Federal or State regulation," while removing "disincentives" for online companies to develop and implement tools to block and filter "objectionable or inappropriate online material." § 230(b).  In a subsection headed "Protection for 'Good Samaritan' blocking and screening of offensive material," § 230 stipulates that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  States are explicitly permitted to enforce their own laws which are "consistent with" § 230, but "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with" it.  § 230(e)(3).

The First Circuit has explained that, in enacting § 230, "Congress sought to encourage websites to make efforts to screen content without fear of liability," and "to permit the continued development of the internet with minimal regulatory interference."  Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 19 (1st Cir. 2016); accord § 230(b).  To these ends, § 230 "broadly" immunizes an entity like Airbnb from claims or theories of liability that "would treat [it] as the publisher or speaker of . . . information" provided by a third party.  Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quotation marks omitted). "An interactive service provider remains liable for its own speech" and for its own unlawful conduct.  Id. at 419.

A central question, then, in assessing claims of CDA immunity—and in resolving the challenges presented here—is "whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another."  Jane Doe, 817 F.3d at 19 (emphasis added).  An entity's "publishing" functions include not only "editorial decision[s] with respect to" the content of a particular posting, but also policies regarding "the

structure and operation of the website," insofar as such policies reflect "choices about what content can appear on the website and in what form." Id. at 20-21.

With these principles in mind, the Court turns to the three provisions of the Ordinance Airbnb challenges here.

III. DISCUSSION

    A. The Penalties Provision

The language of the Penalties provision echoes ordinances enacted by San Francisco and Santa Monica, both of which survived nearly identical legal challenges by Airbnb. See HomeAway.com, Inc. v. City of Santa Monica, 918 F.3d 676, 680 (9th Cir. 2019) (upholding dismissal of claims challenging ordinance prohibiting completion of booking transaction and collection of fee for rental of unregistered property); Airbnb, Inc. v. City & Cty. of San Francisco, 217 F. Supp. 3d 1066, 1071 (N.D. Cal. 2016) (declining to enjoin ordinance making "it a misdemeanor to collect a fee for providing booking services for the rental of an unregistered unit"). In both California cases, as in this one, Airbnb's primary challenge was a claim that the relevant provision was preempted by § 230 of the CDA. And, in each case, the municipalities defended the ordinances as targeting affirmative, unlawful conduct by Airbnb distinct from its publication of third-party content.[4]

---

[4] To the extent the City continues to advance the view expressed in its brief that Airbnb lacks standing to challenge the Penalties provision because its subsidiary is the entity that would be fined, the Court rejects that argument. Even if Airbnb is wrong that it "will incur the financial injury" of any fines imposed on its wholly owned subsidiary, and even if the Court were not inclined to view Airbnb and its subsidiary as "a collective entity" for CDA purposes, Doc. No. 32 at 10-11, the City itself acknowledges that any non-frivolous challenge to Airbnb's standing could be resolved simply and promptly by adding the subsidiary as a plaintiff in this action, Doc. No. 39 at 46-47.

In the First Circuit, § 230 of the CDA "shields conduct if": "(1) [the defendant] is a provider or user of an interactive computer service; (2) the claim is based on information provided by another information content provider; and (3) the claim would treat [the defendant] as the publisher or speaker of that information." Jane Doe, 817 F.3d at 19 (quotation marks omitted; latter alteration in original); see HomeAway.com, 918 F.3d at 681 (reflecting Ninth Circuit's applies a nearly identical three-pronged analysis). For present purposes, the parties agree or assume that Airbnb is a "provider . . . of an interactive computer service," and that the information in Airbnb's listings is "provided by another information content provider" (i.e., the hosts). Doc. No. 31 at 13. The Court's focus, then, is on the final prong of the analysis: whether the fine described in the Penalties provision treats Airbnb "as the publisher or speaker of" the information contained in its rental listings. This assessment "depends on whether the [theory of liability] necessarily requires that the [website operator] be treated as the publisher or speaker of content provided by another." Jane Doe, 817 F.3d at 19; accord HomeAway.com, 918 F.3d at 682; Airbnb, 217 F. Supp. 3d at 1074.[5]

---

[5] Airbnb argues vigorously against relying on the San Francisco and Santa Monica cases, urging that the First Circuit has adopted a dramatically broader interpretation of § 230 than the Ninth Circuit has, such that in this jurisdiction the CDA expansively protects all decisions a company makes that in any way implicate the overall design and operation of its online platform. Doc. No. 32 at 14-15; Doc. No. 39 at 5, 48-49. Having considered the relevant First and Ninth Circuit decisions, this Court perceives no material differences in how the two Courts of Appeals interpret the CDA. Indeed, the Jane Doe decision discusses Ninth Circuit precedent without distinguishing or questioning it, including with respect to the critical prong of the inquiry here. See 817 F.3d at 19 (quoting Barnes v. Yahoo!, Inc., 571 F.3d 1096, 1101 (9th Cir. 2009), in describing the "ultimate question" regarding whether a cause of action treats a defendant as the publisher of third-party content); see also HomeAway.com, 918 F.3d at 681-84 (quoting from and relying on Barnes).

To the extent Airbnb views the California decisions as "outliers," it mischaracterizes the state of the law. Those cases are the only other federal court decisions resolving CDA challenges to similar local ordinances. But see Airbnb, Inc. v. City of New York, Nos. 18 Civ. 7712 & 7742, 2019 WL 91990, at *23-24 (S.D.N.Y. Jan. 3, 2019) (enjoining a local data-sharing requirement in a case not involving a related CDA challenge). All other cases upon which

Because the Penalties provision is aimed at regulating Airbnb's own conduct, and not at punishing it for content provided by a third party, § 230 of the CDA does not preempt it. The record establishes that Airbnb plays multiple related but distinct roles in the online platform it has established. Two are relevant here: Airbnb acts as both a publisher of third-party rental listings, and as an agent that books rental agreements between users and hosts and collects and distributes payments when such a deal is made.[6] Doc. No. 5 at 1-2; Doc. No. 34 at 1-2. The Penalties provision is directed only at Airbnb's conduct in the latter role; it "cares not a whit about" the decisions Airbnb makes as a publisher. Airbnb, 217 F. Supp. 3d at 1074.

On its face, the Penalties provision does not impose liability based on the content of Airbnb's listings or the editorial decisions Airbnb makes about what can appear on its platform. Unlike the Santa Monica ordinance, it does not even levy a fine for facilitating the booking of an unregistered unit. See HomeAway.com, 918 F.3d at 680 (noting ordinance obligated Airbnb to "refrain[] from completing any booking transaction for properties not licensed and listed on the City's registry"). Rather, the Penalties provision threatens a fine only if Airbnb "accepts a fee for booking" an ineligible unit. Doc. No. 21-1 at 14. The fine is neither expressly tied to the content of the underlying listing, nor explicitly aimed at penalizing the manner in which Airbnb has structured its booking and payment services. It is triggered based on Airbnb's own conduct as a participant in the rental transaction, and it simply requires Airbnb "to cross-reference bookings against" the City's list of ineligible units before collecting its fees, thereby "fairly

---

Airbnb relies involve materially distinct circumstances—civil claims explicitly seeking to impose tort liability on an online publisher for harm allegedly arising from postings made by third parties. E.g., Jane Doe, 817 F.3d at 16-17.

[6] That Airbnb itself views these two functions as distinct aspects of its overall business model is evidenced by the fact that it has created a separate business entity—Airbnb Payments, Inc.—to act as the payment processor for bookings made through its platform. Doc. No. 34 at 1.

charg[ing]" Airbnb "with keeping abreast of the law" governing its own behavior.[7] HomeAway.com, 918 F.3d at 682-83. In these circumstances, Airbnb has not shown a likelihood of success on its facial preemption challenge to the Penalties provision.

Airbnb alternatively urges that the provision, as applied to it, is preempted because its practical effect will be to require the monitoring and removal of third-party content, as well as a change in website design insofar as booking and payment services are concerned. Doc. No. 10 at 22. In support, Airbnb points to the Declaration of its Director of Business Operations and Strategy, who avers that the Penalties provision would effectively, if implicitly, "require Airbnb fundamentally to change the structure and operation of its platform" and "force [it] to eliminate [a] key design feature" which allows users to find and then "swiftly book rental transactions on the same website," "because it could not risk allowing an automatic booking before reviewing the content of the listing to ensure that it complies with the Ordinance." Doc. No. 5 at 1, 10; see Doc. No. 10 at 22-25 (analogizing to Nat'l Meat Ass'n v. Harris, 565 U.S. 452 (2012)).

The Court accepts "at face value [Airbnb's] assertion that [it] will choose to remove noncompliant third-party listings on [its] website as a consequence of the Ordinance." HomeAway.com, 918 F.3d at 683. But that assertion—no matter how decisively worded[8]—

---

[7] Such a requirement is entirely consistent with the First Circuit's application of CDA immunity in Jane Doe and Lycos. In both cases, the Court of Appeals focused on the basis for the plaintiffs' assertions of liability, asking whether "third-party content is . . . an essential component of" the plaintiffs' claims. Jane Doe, 817 F.3d at 22; accord Lycos, 478 F.3d at 422 (finding defendant's alleged liability was "premised on imputing to it" the content of the challenged postings). Here, the threatened fine arises from Airbnb's collection of a fee for booking an ineligible rental unit, and in no way depends on anything a unit's owner says when advertising the rental.

[8] The language in the Declaration seems specifically aimed at avoiding a deficiency that factored into the rejection of Airbnb's challenge to the San Francisco ordinance. See Airbnb, 217 F. Supp. 3d at 1075 (citing Airbnb's failure "to submit evidence showing that the Ordinance will in fact inevitably or perforce require them to monitor, remove or do anything at all to the content that hosts post").

cannot strip the Court of its obligation to determine, as a matter of law, what the Penalties provision in fact requires. See id. at 683 n.3 (explaining, in the face of the same sort of assertion, that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))). The plain language of the provision mandates no such action by Airbnb. Clearly, there are other responses Airbnb theoretically could take to avoid liability under the Penalties provision, including notifying users that it will enforce the indemnification provision that already is part of its Terms of Service in the event Airbnb is fined arising from its booking of an ineligible unit. See Airbnb, 217 F. Supp. 3d at 1075 (identifying this and other alternative responses).

"Even assuming that [monitoring and] removing certain listings may be [Airbnb's] most practical compliance option, allowing internet companies to claim CDA immunity under these circumstances would risk exempting them from most local regulations and would . . . create a lawless no-man's-land on the Internet." HomeAway.com, 918 F.3d at 683 (quotation marks omitted). This Court is not persuaded that Congress, in enacting the CDA, intended to grant blanket immunity to all of a multifaceted company's conduct simply because the company can point to one part of its business involving publication of third-party content, and can then imagine ways in which regulation of its other conduct—no matter how attenuated from its online publication functions—will "force" it to make changes to the design of its platform. As a matter of law, the Court concludes that the Penalties provision reaches Airbnb in its capacity as a booking agent and payment processor. In doing so, it imposes no liability, nor requires any action, that necessarily arises from Airbnb's publication of content provided by another.[9]

---

[9] For the reasons outlined by the District Court which rejected Airbnb's challenge to San Francisco's ordinance, this Court finds Airbnb's reliance on National Meat is misplaced. See 217 F. Supp. 3d at 1075-76 (distinguishing scope and preemptive effect of FMIA from that of

Airbnb advances a third theory in support of its CDA challenge to the Penalties provision: "obstacle" or "conflict" preemption. Doc. No. 10 at 26-27. Assessing this preemption claim requires consideration of "how broadly to construe the CDA so as to continue serving the purposes Congress envisioned while allowing state and local governments breathing room to address the pressing issues faced by their communities." HomeAway.com, 918 F.3d at 684. The Court agrees that Airbnb's website is the sort of innovative online platform that the CDA generally was meant to encourage. Airbnb, however, has not established it is likely to succeed in showing that a relatively modest fine[10]—imposed not for something one of Airbnb's hosts or users published online, but because of Airbnb's independent act of collecting a fee after facilitating an illegal rental transaction—meaningfully implicates, let alone obstructs, Congress's desire to "allow[] website operators to engage in blocking and screening of third-party content, free from liability for such good-faith efforts." Jane Doe, 817 F.3d at 18.

In sum, Airbnb's efforts to invoke the CDA as a basis for enjoining the Penalties provision fail.

Finally, Airbnb challenges the Penalties provision on First Amendment grounds, arguing it impermissibly imposes a content-based financial burden on commercial speech. Doc. No. 10 at 27-31. For reasons already thoroughly and persuasively articulated by both a panel of the Ninth Circuit and a judge in the Northern District of California, Airbnb's First Amendment challenge fails. See HomeAway.com, 918 F.3d at 684-86 (rejecting identical First Amendment

---

CDA, noting limited application of National Meat in other contexts, and rejecting idea that CDA should provide "windfall" for online booking agents).

[10] Boston's ordinance provides for a $300 fine. Doc. No. 21-1 at 14. San Francisco's made violations misdemeanor offenses punishable by imprisonment and a fine up to $1,000. 217 F. Supp. 3d at 1071. Santa Monica's also made violations misdemeanors carrying the possibility of imprisonment and a fine up to $500. 918 F.3d at 680. Violations of New York's data-sharing ordinance trigger fines up to $1,500. 2019 WL 91990, at *6.

challenge because ordinance "did not target conduct with a significant expressive element," and "incidental impacts on speech" were "minimal" and limited only to advertisements of unlawful rentals); Airbnb, 217 F. Supp. 3d at 1076-79 (same). The Penalties provision directly and exclusively regulates economic activity—the collection of fees for booking illegal short-term rentals—not speech or other expressive conduct. It is part of an effort by the City to regulate its housing and rental market. See Doc. No. 21-1 at 2-3, 7 (noting purpose of ordinance is to regulate short-term rentals through a registration process, in order to "improve quality of life" and address "the demand for more long-term rental units"). As explained above, the Penalties provision does not require Airbnb to edit or monitor the speech of others; rather, it permits Airbnb "to decide how best to comply with the prohibition on [collecting fees from] booking unlawful transactions." HomeAway.com, 918 F.3d at 685. In these circumstances, Airbnb has not established a likelihood that either the inevitable effect or the stated purpose of the Penalties provision implicates the First Amendment.

Accordingly, Airbnb's motion is DENIED as to the Penalties provision.

B.      The Enforcement Provision

Airbnb urges that the Enforcement provision facially compels it to monitor and remove third-party content or suffer complete banishment from Boston. This, Airbnb argues, constitutes an explicit threat of liability based on its role as a publisher of information provided by third parties, and, thus, directly invades the immunity bestowed upon it by the CDA. Doc. No. 10 at 18-20; Doc. No. 32 at 7-10. The City initially resisted this view, proposing that Airbnb "might be more of a partner in creating listings than a bulletin board where other people post their content." Doc. No. 31 at 24. In particular, the City pointed to certain standard features of Airbnb's platform, including automatic notifications (e.g., bestowing "Superhost" status), Smart

Pricing and Instant Book options, and cancellation and insurance policies, which the City suggested shaped or contributed to the content of the listings. Id. at 23.

At oral argument, however, the City retreated on this point, agreeing "at this stage" that Airbnb's standard features do not render it a "content provider" with respect to the information at issue in this lawsuit—a unit's registration and eligibility under the Ordinance. Doc. No. 39 at 36-40. The City further conceded that the Enforcement provision's threat of banishment in the event of a Booking Agent's failure to agree to monitor and remove listings constitutes, in the City's view, a threat of liability arising from the publication of third-party content for purposes of the CDA.[11] Id. at 38-39.

In light of the City's concessions, the Court finds that Airbnb has shown it is likely to succeed on the merits of its claim that the Enforcement provision is preempted by § 230 of the CDA. The Court further finds that Airbnb has established it would be irreparably harmed if it were required to comply with an unlawful mandate, and that the City's ability to enforce the rest of the Ordinance against hosts using Airbnb substantially minimizes any hardship the City faces if the Enforcement provision is enjoined.

---

[11] The Enforcement provision's clause conditioning the ability of Booking Agents to operate in Boston on their willingness to agree to enforce local laws is unlike a threat of civil liability premised on a claim that a website is responsible for the content its users post. The parties have not cited, and the Court has not found, any other decision reviewing a state or local requirement like the Enforcement provision. Because the City has elected not to press any argument relying on this distinction, the Court need not assess now whether or how it might impact the CDA's application to the Enforcement provision. Cf. Jane Doe, 817 F.3d at 18 (describing § 230 of the CDA as barring "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions" (emphasis added; quotation marks omitted)); Lycos, 478 F.3d at 419 (characterizing purpose of § 230 at eliminating "chilling effect" of imposing "intermediary tort liability" on internet companies).

Accordingly, Airbnb's motion for a preliminary injunction is ALLOWED as to the Enforcement provision.[12]

### C. The Data Provision

The Data Provision requires monthly disclosure of three categories of information for Airbnb's Boston listings: 1) the "location"; 2) whether the listing is for a "room" or a "whole unit"; and 3) the number of nights the room or unit was occupied during the preceding month. Doc. No. 21-1 at 15-16. Airbnb challenges the Data provision under the Fourth Amendment and the SCA. In order to succeed on either challenge, Airbnb must establish that the City seeks information in which either Airbnb or its users have a reasonable expectation of privacy. See 18 U.S.C. § 2511(2)(g)(i) (providing that disclosure of information that "is readily accessible to the general public" is not unlawful under the SCA); Katz v. United States, 389 U.S. 347, 351 (1967) (deeming information that is "knowingly expose[d] to the public" to be outside the scope of the Fourth Amendment's protection).

The City urges that it will construe the first category of information to require only whatever "location" description a host has included in the published Airbnb listing, and that published listings always include the second category's room-or-unit designation. Doc. No. 31-4 at 13; Doc. No. 31-11 at 11-12; Doc. No. 39 at 40. As to these two pieces of information, then, the City argues neither the SCA nor the Fourth Amendment justify Airbnb's resistance to disclosure, since the information is available to the public. Doc. No. 31 at 29-31. Airbnb's only rejoinder is to claim that its own compilation of this admittedly public information would

---

[12] Because the Court enjoins the Enforcement provision based on Airbnb's claim of CDA preemption, it need not evaluate the alternative constitutional challenges at this time.

constitute a private business record protected by the Fourth Amendment. Doc. No. 32 at 20-22; Doc. No. 39 at 51-55.

To the extent the Data provision compels Airbnb to provide monthly lists limited to information appearing in its public listings for Boston rental properties—specifically, the location description a host has provided in the listing, and whether the listed accommodation is a room or an entire unit—the Court finds Airbnb has not established a likelihood that it will succeed in its SCA or Fourth Amendment challenges. Neither Airbnb nor its users can reasonably claim an expectation of privacy in information included in public listings, and Airbnb has not established that a list containing only those two categories of information is a private business record subject to Fourth Amendment protection. As such, the motion for a preliminary injunction is DENIED as to the first two categories of information identified in the Data provision, insofar as those categories describe publicly available information.[13]

The City concedes that the third category of information is subject to a different analysis, as the usage data for a unit (i.e., the number of nights it was occupied in a given time period) is not something Airbnb or its hosts generally publish. Doc. No. 31 at 29 n.10; Doc. No. 39 at 42-43. Indeed, the City all but admitted at the motion hearing that Airbnb is likely to succeed on its Fourth Amendment challenge as to the usage data component of the Data provision. Doc. No. 39 at 42. The Court finds Airbnb has a reasonable expectation of privacy in the nonpublic usage data for its listings—especially when paired with additional information such as the location of

---

[13] To the extent the listing's "location" might be intended or construed to require information beyond the location description a host chooses to publish, the motion for a preliminary injunction is ALLOWED as to the first category of data. In other words, if a host limits the description in a public listing to the general neighborhood in which a unit is located, and does not publicly provide the street address, the City is ENJOINED from requiring Airbnb to provide anything besides the neighborhood designation for that listing, pending resolution of this litigation.

16

the unit—and that the City cannot lawfully require disclosure of that information without the protections guaranteed by the Fourth Amendment (protections which are not accounted for in the Ordinance). Airbnb, Inc. v. City of New York, Nos. 18 Civ. 7712 & 7742, 2019 WL 91990, at *8-20 (S.D.N.Y. Jan. 3, 2019). Thus, Airbnb has shown it is likely to succeed in its challenge to the third category of information listed in the Data provision. Because the Court easily concludes that Airbnb would be irreparably harmed by having to comply with an unconstitutional requirement that it disclose private business information, see id. at *23-24 (finding that a "threatened, continuous violation of a constitutional right constitutes irreparable harm for purposes of a preliminary injunction motion"),[14] the motion is ALLOWED as to the final category of information identified in the Data provision.

## IV. CONCLUSION

Accordingly, the Motion for a Preliminary Injunction (Doc. No. 3) is ALLOWED in part and DENIED in part as follows:

1) The motion is DENIED, and no injunction shall enter, as to section 9-14.9(a) of the Ordinance.

2) The motion is ALLOWED as to section 9-14.10(b), which is PRELIMINARILY ENJOINED pending resolution of this litigation.

3) The motion is DENIED as to section 9-14.11 insofar as that provision requires monthly reporting of publicly available information in the first two enumerated

---

[14] In the New York case, a city ordinance requiring disclosure of data by Airbnb was preliminarily enjoined in its entirety on Fourth Amendment grounds. 2019 WL 91990, at *25-26. There, though, the ordinance explicitly called for the disclosure of seven specified categories of information, including plainly personal and non-public user information such as "the full legal name, physical address, phone number, and email address of the host." Id. at *9. The Data provision in Boston's ordinance is far less intrusive; thus, it presents a much more circumscribed threat of constitutional harm which does not warrant enjoining the entire provision.

categories; as to all other information sought, the motion is ALLOWED, and section 9-14.11 is PRELIMINARILY ENJOINED pending resolution of this litigation.

By May 17, 2019, the parties shall file a joint status report stating their joint or separate proposal(s) for a schedule to govern the remainder of this litigation.

SO ORDERED.

      /s/ Leo T. Sorokin
United States District Judge